No. 24-1345

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAVID HIEBER,

*Plaintiff-Appellant*,

v.

OAKLAND COUNTY and
KYLE JEN, in his Official and
Individual capacities,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 4:22-cv-11417-FKB-EAS

**APPELLANT DAVID HIEBER'S REPLY BRIEF**

Prepared by:
KEVIN J. KELLY (P74546)
THE MASTROMARCO FIRM
Attorneys for Plaintiff-Appellant
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
kkelly@mastromarcofirm.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     PLAINTIFF'S AGE DISCRIMINATION CLAIMS . . . . . . . . . . . . . 1

    II.    PLAINTIFF'S POLITICAL AFFILIATION RETALIATION
           CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

    III.   PLAINTIFF'S PRE-DEPRIVATION DUE PROCESS CLAIM . . . . .16

    IV.   PLAINTIFF'S POST-DEPRIVATION DUE PROCESS CLAIM . . . .18

    V.    PLAINTIFF'S DEFAMATION CLAIM . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION & RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Ahlmeyer v. Nevada System of Higher Educ.*,
555 F.3d 1051 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Armstrong v. Shirvell*,
596 F. App'x 433 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Barry v. Noble Metal Processing, Inc.*,
276 F. App'x 477 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Buckner v. City of Highland Park*,
901 F.2d 491 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Bullington v. Bedford County, Tennessee*,
905 F.3d 467 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Charvat v. Eastern Ohio Regional Wastewater Auth.*,
246 F.3d 607 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chennareddy v. Bowsher*,
935 F.2d 315 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Crawford v. Columbus State Community College*,
196 F. Supp. 766 (S.D. Ohio 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 3

*Davis v Jackson Public Schools*,
2020 WL 3621292 (Mich. Ct. App. July 2, 2020) . . . . . . . . . . . . . . . . . . . . . . . .8-9

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Fitzgerald v. Barnstable Sch. Committee*,
555 U.S. 246; 129 S. Ct. 788 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

*Goldblum v. University of Cincinnati*,
62 F.4th 244 (6th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-4

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

*Harris v. Bornhosrt*,
513 F.3d 503 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Hildebrand v. Allegheny County*,
757 F.3d 99 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Hildebrant v. Meredith Corp.*,
63 F. Supp. 3d 732 (E.D. Mich. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Janes v. Bardstown City Schs. Bd. of Educ.*,
97 F.3d 1452; 1996 WL 536794 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kimel v. Florida Bd. of Regents*,
528 U.S. 62; 120 S. Ct. 631 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Lafleur v. Texas Dep't of Health*,
126 F3d 758 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Levin v. Madigan*,
692 F.3d 607 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Lott v. ICS Merill*,
483 F. App'x 214 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*,
45 F. App'x 354 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*McMillan v. Castro*,
405 F.3d 405 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Migneault v. Peck*,
158 F.3d 1131 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75; 118 S. Ct. 998 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Tapia-Tapia v. Potter*,
322 F.3d 742 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wexler v. White's Fine Furniture, Inc.*,
317 F.3d 564 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*White v. Duke Energy-Kentucky, Inc.*,
603 F. App'x 442 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Zombro v. Baltimore City Police Dep't*,
868 F.2d 1364 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

M.C.L. 15.362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

## REPLY ARGUMENT

## I.     PLAINTIFF'S AGE DISCRIMINATION CLAIMS

In their Brief, Defendants begin by raising an issue left unresolved by the trial court: whether plaintiff's claim of age discrimination in violation of 42 U.S.C. § 1983 and the Equal Protections Clause of the Fourteenth Amendment is preempted by the Age Discrimination in Employment Act ("ADEA").  This Honorable Court has not yet determined this issue.  *Crawford v. Columbus State Community College*, 196 F. Supp. 766, 781 (S.D. Ohio 2016).  The key to answering the question, however, is "congressional intent."  *Bullington v. Bedford County, Tennessee*, 905 F.3d 467, 470 (6th Cir. 2018).  A court should find a claim precluded if Congress intended a statute's remedial scheme to "be the exclusive avenue through which a plaintiff may assert [the] claims."  *Fitzgerald v. Barnstable Sch. Committee*, 555 U.S. 246, 252; 129 S. Ct. 788 (2009).  It is important to note the source of the right being asserted, as one can enforce statutory *or* constitutional rights through § 1983.[1]  In cases involving the assertion of a violation of constitutional rights, like the instant matter, the Supreme Court has explained:

> In cases in which the § 1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the

---

[1] It should be clear that enforcing statutory rights through § 1983 should be preempted, because a claim brought pursuant to § 1983 would be duplicative of the corresponding parallel statutory claim.  For instance, this Court has held, in an unpublished opinion, that the ADEA precludes § 1983 *statutory* violations, but did not address whether the ADEA precludes § 1983 *constitutional* violations, premised on rights owing their existence to the Equal Protection Clause and not an act of Congress.  *See Janes v. Bardstown City Schs. Bd. of Educ.*, 97 F.3d 1452; 1996 WL 536794 (6th Cir. 1996)(unpublished table decision).

> Constitution. Where the contours of such rights and protections diverge
> in significant ways, it is not likely that Congress intended to displace §
> 1983 suits enforcing constitutional rights.

*Fitzgerald*, 555 U.S. at 252-253; 129 S. Ct. 788. Ultimately, "[t]he burden [] lies

with the defendant in a § 1983 action to prove preclusion." *Charvat v. Eastern Ohio*

*Regional Wastewater Auth.*, 246 F.3d 607, 615 (6th Cir. 2001).

While this Court has not addressed the issue, there is currently a circuit split

amongst the Courts of Appeals. The majority rule is in favor of preemption. *See*,

e.g., *Tapia-Tapia v. Potter*, 322 F.3d 742 (1st Cir. 2003); *Hildebrand v. Allegheny*

*County*, 757 F.3d 99 (3d Cir. 2014); *Zombro v. Baltimore City Police Dep't*, 868 F.2d

1364 (4th Cir. 1989); *Lafleur v. Texas Dep't of Health*, 126 F3d 758 (5th Cir. 1997);

*Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009);

*Migneault v. Peck*, 158 F.3d 1131 (10th Cir. 1998), *abrogated on other grounds by*

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62; 120 S. Ct. 631 (2000); *Chennareddy*

*v. Bowsher*, 935 F.2d 315 (D.C. Cir. 1991). However, it is important to note that the

important opinions creating the basis for the majority rule, such as *Zombro*, pre-date

the Supreme Court opinion in *Fitzgerald*.

Following *Fitzgerald*, the Seventh Circuit found the ADEA did not preempt a

§ 1983 claim based on the Equal Protection Clause in the very well-reasoned opinion

of *Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012). While the District Courts within

this Circuit have reached differing conclusions on this question, the only District

Court that has weighed the two lines of cases and compared the strengths and weaknesses of the positions was in *Crawford v. Columbus State Community College*, 196 F. Supp. 3d 766 (S.D. Ohio 2016). In *Crawford*, the District Court followed the reasoning and rule of *Levin*. Because *Levin* and *Crawford* present the more persuasive argument, this Honorable Court, if it addresses this issue, should hold that the ADEA does not preempt age discrimination claims based on the constitution and enforced through § 1983.[2]

Defendants next challenge Plaintiff's ability to establish the fourth element of his prima facie case of age discrimination, specifically attacking the comparison of Plaintiff and Mr. Paris. Defendants attack the comparison on three bases: (1) whether they dealt with the same supervisor; (2) whether they were subject to the same standards; and (3) whether their conduct was sufficiently similar. First, Defendants claim that the fact that Plaintiff and Mr. Paris did not share the same supervisor is dispositive and, as such, they are not similarly situated. The applicable law directly contradicts Defendants' representation. In *Goldblum v. University of Cincinnati*, 62 F.4th 244 (6th Cir. 2023), this Court explained:

Whether the "same supervisor" criterion "is relevant depends upon the

---

[2] An interesting consequence of holding that the ADEA preempts the §1983 claim would be that government would then be permitted to treat identifiable classes of citizens differently without legitimate reason. For instance, a person with a disability may file suit under both the Americans with Disabilities Act and § 1983. *See Bullington*, 905 F.3d 467. An older public employee would not be able to enforce his constitutional right to be free from discrimination under § 1983, while a disabled public employee would be able to. One must question what rational basis government would have to treat the two classes (age and disability) differently in enforcing their civil rights. The Court should keep this fact in mind and not use a tool government has granted to its citizens to vindicate their rights, i.e., suits pursuant to § 1983, to accomplish further disparate treatment.

facts and circumstances of each individual case." *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005). Indeed, we have observed that requiring comparators to have the 'same supervisor' may be better understood as requiring comparators to have 'dealt with the same ultimate decision-maker." *Id.*

*Goldblum*, 62 F.4th at 255 n 3. Whether two employees shared the "same supervisor" is "made on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor." *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 480 (6th Cir. 2008).

Defendants' argument does not attempt to establish the relevancy of this particular aspect. Defendants do not offer any evidence suggesting the County treated the two situations differently because of who Plaintiff's immediate supervisor was. At the end of the day, the same individuals from the Human Resources Department were the relevant decision-makers in determining what, when, and who to investigate. Where, as here, a member of management has attempted to compare himself with a lower-ranking employee and the policies cited in the decision to terminate did not differentiate treatment based on rank in the organization, this Court has found the comparison to be appropriate. *See White v. Duke Energy-Kentucky, Inc.*, 603 F. App'x 442, 448-450 (6th Cir. 2015).

Next, it is unclear what Defendants' argument is regarding the standards and whether Plaintiff and Paris were subjected to the same standards. Defendants deny Paris received any "special treatment." Defendants also maintain that its permissible

to hold higher ranking employees to a higher standard than subordinates; however, Defendants never state or cite to any evidence establishing that Oakland County treated Plaintiff differently because of him holding a higher-ranking position. While an employer may hold different ranking employees to different standards, Defendants never explain how or why Defendants treated the two situations differently. There is no testimony from any decision-makers, explaining that they found there were different standards. Moreover, Mr. Paris was himself a supervisor and Defendants offer no reason why one supervisor would be held to one standard while a different supervisor would be held to a different standard. There is simply no substance to Defendants' argument.

There cannot be any substance to Defendants' argument, because the two policies the County cited in its termination of Plaintiff's employment do not create different standards for different employees. The policies or standards that were applicable to Plaintiff are the very same policies standards that Paris' behavior violated. Defendants have failed to show that the distinction in Plaintiff's rank from Paris' rank is relevant to the comparison and, further, that the distinction was used by Defendants to treat Plaintiff differently. The allegation that prompted the 2021 investigation of Plaintiff was an October 18, 2021 email in which Paris complained that he heard from unidentified employees that Plaintiff "was openly bashing the Diversity, Equity and Inclusion survey." (**ECF No. 72-13, PageID.2633-2634**). Ms.

Young complained about Paris' statement that he did not understand "you bisexuals," referencing Ms. Young's decision to date both women and men.  *See* (**ECF No. 72-31, PageID.3053**).  Mr. Paris' complaint was submitted to Ms. Fisher via email.  *See* (**ECF No. 72-13, PageID.2633**).  Ms. Young's complaint was submitted to Ms. Fisher via email.  (**ECF No. 72-31, PageID.3053**).  Defendants maintain that they investigated both complaints, but Defendants' position is divorced from reality.

Defendants' maintain that the County investigated Ms. Young's complaint by interviewing Mr. Paris and no one else.  Defendants maintain that the County investigated Mr. Paris' complaint, but in doing so, according to Defendants, the County did not limit itself to interviewing Plaintiff but interviewed eleven other employees (of which there are only nine recordings) from the Equalization Department, as week as gathered statements and records.  At the same time, the record is devoid of any evidence that Defendants investigated Ms. Young's complaint apart from self-serving testimony.  Moreover, we know that had the County investigated Mr. Paris and interviewed other members of the Equalization Department, employees had negative things to say about Mr. Paris as established by Ms. Kurmas's letter of resignation and her complaint that Mr. Paris behaved in "an aggressive and confrontational manner that was unwarranted and inappropriate for the workplace."  *See* (**ECF No. 72-33, PageID.3080-3083**).  While Plaintiff was allegedly discharged for making the alleged comment, Mr. Paris received no

discipline for making the alleged comment.  Defendants subjected Plaintiff to an investigation, solicited complaints against him, and built a file against him to justify his termination; Defendants subjected Mr. Paris to nothing, and, in fact, the County subsequently named Mr. Paris as Ms. Young's supervisor.  Furthermore, one could argue that Mr. Paris' behavior is a more culpable in its offense against the Non-Discrimination policy.  While Mr. Paris complained that Plaintiff disparaged a DEI survey and allegedly said he would lie about taking it, Plaintiff's comments in and of themselves are not discriminatory as there may be several non-discriminatory reasons to be worried about your employer being able to identify the person taking the test and the views said person has about diversity, equity, and inclusion issues.[3] At the same time, Ms. Young faced a comment from Mr. Paris that was directly addressed to her and questioned the legitimacy of her sexual orientation and has no non-discriminatory explanation.  In summary, Defendants treated the two situations differently when they should have been treated the same under Defendants' policies and, as such, Plaintiff and Mr. Paris are similar enough to uphold the comparison and find that Plaintiff has satisfied the fourth element of his prima facie case.

Regarding the issue of pretext, Defendants begin by contesting whether

---

[3] The fact that Plaintiff is also claiming that the Coulter Administration was targeting long-term, older employees hired by the prior Republican regime based upon their political views lends support and credibility to Plaintiff's fears about having his views on DEI issues identified.  It is further circumstantial proof that Defendant Oakland County retaliated against Plaintiff based on his political affiliation; the whole reason why Plaintiff did not want to participate in the DEI survey was fear of potential retaliation.

Defendants can rely on hearsay in establishing it had a legitimate business reason. Defendants argue that they can rely upon the hearsay statements of its employees during the investigation of Plaintiff's complaint or that the statements can be used for a non-hearsay use, because the statements are not offered for the truth of the matter asserted, but for explaining the County's knowledge and motivations when suspending and terminating Plaintiff. Defendants attestation that the statements are not being used for the truth of the matter asserted does not hold upon examination. The mere fact that the County received a complaint does not explain Plaintiff's suspension or termination. The County allegedly received a complaint, but Plaintiff denied making the complained of statement; the County necessarily had to determine who was telling the truth. The witness statements only gain relevance and could motivate the County's decision-making if one considers the witness statement as true. This point can be illustrated by the facts of *Davis v Jackson Public Schools*, 2020 WL 3621292 (Mich. Ct. App. July 2, 2020).

In *Davis*, the plaintiff was a teacher that had been assaulted by a student and reported that violation of law to the police. *Id*. at *1. The plaintiff was subsequently placed on administrative leave, transferred to a different school with unfamiliar curriculum, and removed her from a curriculum chair position. *Id*. The plaintiff filed suit the school alleging violations of the Michigan Whistleblowers' Protection Act, which prohibits retaliation against employees who report violations of law to

"public bodies," which include the police.  *Id*.; *see also* M.C.L. 15.362.  The employer sought to introduce a police report.  *Davis*, 2020 WL 3621292, at *9.  The employer argued that it was not being offered for the truth of the matter asserted, but to explain the employer's motivations and to explain their actions.  *Id*.  More specifically, the employer attempted to rely upon students' statements characterizing what transpired as accidental to explain why the employer did not believe an assault occurred.  *Id*. at * 10.  The Court of Appeals determined the police report and the witness statements were inadmissible hearsay, reasoning as follows:

> Initially, we question defendant's assertion that it sought to admit the police report merely to show how its school administrators conducted themselves and interacted with plaintiff following her allegation of assault by MH, and not for the truth of its contents.  Specifically, to the extent that defendant sought to rely on the police report to explain why administrators may not have taken plaintiff's allegations more seriously, or to illustrate the motivations of its administrators in the aftermath of plaintiff's allegations of assault, the relevancy of the evidence for this purpose would have been dependent upon the truth of the statements recounted in the police report because it was being offered to essentially explain defendant's determination that an assault did not occur. . . . Therefore, we agree with the trial court that defendant sought to admit the document for the truth of its contents, despite of defendant's protestations to the contrary.

*Id*.  That the County is offering the witness statements for the truth of the matter asserted is clear from the County's invocation of the honest belief rule.

Defendants attempt to invoke the honest belief rule, but this Court should question what particularized facts Defendants rely upon in arguing it had an honest belief that Plaintiff violated the Non-Discrimination Policy.  Defendants terminated

Plaintiff's employment because it concluded Plaintiff had made several statements that allegedly violated the County's policies. If Defendants are introducing the witness statements for non-hearsay purposes, then there is no admissible evidence that Plaintiff actually made any of the comments attributed to him. To explain why Defendants concluded Plaintiff violated said policy, Defendants necessarily have to treat the witness statements as true, especially considering Plaintiff's denial of making said statements, because Defendants had to determine who was telling the truth and one cannot determine one statement is true over another, unless one considers the content and the truth of the matter asserted therein. Defendants cannot overcome this evidentiary issue as this issue itself should create a factual dispute regarding Defendants' motivation.

Next, Defendants argue there is a lack of evidence of a discriminatory animus, because Defendant Jen is of a similar age to Plaintiff. The notion Defendants rely upon has been characterized as the "same-group inference" and has been squarely rejected by the Supreme Court and Sixth Circuit. This inference relies "on the idea that one member of a group is unlikely to discriminate against another member of the same group." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2004). The Supreme Court has expressly rejected this inference. *Id.*; *Lott v. ICS Merill*, 483 F. App'x 214, 218-219 (6th Cir. 2012). In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75; 118 S. Ct. 998 (1998), the Supreme

Court held:

> Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.

*Id*. at 78.   Defendants' attempt to rely upon the "same-group inference" should be rejected.

Defendants next frivolously create a new rule of law that a plaintiff cannot rely upon the evidence offered in support of the prima facie case.  This argument is directly contradicted by Supreme Court precedent.  In *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248; 101 S. Ct. 1089 (1981), the Supreme Court explained regarding the analysis at the pretext state, stating:

> In saying that the presumption drops from the case [at the pretext stage], we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case.  A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.  Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.  Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Id*. at 255 n. 10.  This Court and the trier of fact can consider the evidence offered in support of Plaintiff's prima facie case for the issue of pretext.

As to the evidence in support of a finding of a factual dispute regarding pretext, Plaintiff has presented several pieces of evidence sufficient to establishing

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

such a factual dispute. As there is no barrier to considering the disparate treatment between Plaintiff and Mr. Paris, the Court can consider that as evidence of pretext under the second and third manners of establishing pretext. The Court can also consider the fact that Defendants investigated Plaintiff, but did not similarly investigate Mr. Paris, because it also evidence of selective enforcement of a policy, permitting the inference that Defendants were motivated by Plaintiff's age.

Plaintiff can also rely upon the evidence of a discriminatory atmosphere and provided case law indicating that such statements are relevant to the issue of pretext. *See*, *e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998). Defendants do not respond to that line of authority and offer no rebuttal other than to deny that the numerous and repeated discriminatory comments by the Deputy County Executive, who runs the Human Resources Department, may be considered as relevant evidence of pretext. Considering the number of statements, that multiple witnesses testified to hearing similar statements, and that a number of the statements were directed towards getting rid of older, long-term employees, such evidence is significant in showing the "cumulative managerial attitude." *Ercegovich*, 154 F.3d at 356. This was not off-hand comments by a low-level employee, but statements from the highest-ranking official overseeing Human Resources under Executive Coulter.

Defendants also contend that the failures to follow County policies are not

evidence of pretext. Plaintiff argued in his brief that Defendants' failed to comply with the County's Pre-Termination Hearings policy. The policy specifically provides for "[a]n opportunity for employee response to the dismissal charges." (**ECF No. 64-15, PageID.1354**). The policy also details the conduct of the pre-termination or *Loudermill* hearing, providing that at one point, the employee will present a "[r]esponse to charges." (**ECF No. 64-15, PageID.1356**). Prior to the pre-termination hearing, Ms. Wood advised that the hearing "is not the time Mr. Hieber would plead his case, that would be done afterward through the Personnel Appeal Board." (**ECF No. 72-20, PageID.2723**). At the hearing, the Hearing Officer, Ms. Fisher, specifically told Plaintiff and his attorney that the hearing "is just to make sure he is aware of the action being taken and understands the reason why, not necessarily that he agrees or disagrees. (**ECF No. 64-20, PageID.1409**). The County told Plaintiff he did not have an opportunity to respond and that such a response would occur post-deprivation at the PAB hearing. Consistent among both Ms. Wood and Ms. Fisher, they erroneously took the position that a Pre-Termination Hearing was just to provide notice to an employee and forget about the opportunity to respond. Because Defendants did not provide Plaintiff an opportunity to respond, Defendants violated the Pre-Termination Hearing policy.

Lastly, Defendants argue that they were not required to permit affidavits or issue subpoenas and, as such, the fact that Chairman Woodward did not permit

affidavits and did not issue subpoenas cannot be evidence of pretext. Whether the ability to present affidavits and to subpoena witnesses was mandatory or discretionary, Defendants' refusal to permit affidavits and its false statements that it could not compel attendance at the PAB hearing does provide further evidence that Defendants were not trying to arrive at the truth, but were trying to rubber stamp a pre-determined outcome. If Chairman Woodward's decision was discretionary, Defendants would need to articulate a non-discriminatory rationale for the refusal, which Defendants have not provided. Moreover, employers can exercise discretion in a discriminatory manner, such as if they did not want Plaintiff to present witness testimony that would call into question the allegations or the credibility of the witnesses and thereby minimize his ability to demonstrate his innocence. Considering the other evidence in the record, a reasonable juror could infer from Woodward's refusals to ensure affidavits were reviewed, witnesses that could be compelled were, and that all documents were shared that Woodward and the County were intentionally making it harder for Plaintiff to prove his case and, as such, further evidence that Defendants' rationale was and is pretextual.

Plaintiff and Defendants present very different explanations for the events forming the basis for this lawsuit. The explanations differ due to the differing interpretations of the evidence presented by the opposing parties. But when there is factual support for both positions, as there is here, a determination of the ultimate

issue should be left to the trier of fact.  In the instant case, Plaintiff has identified a corporate mindset openly advocating eliminating older, long-term employees, disparate treatment in that a complaint against Plaintiff was investigated and a complaint against a substantially younger employee was not (not even disciplined), the fact that the employer relied upon allegations from a prior investigation that were unsubstantiated, failed to give Plaintiff an opportunity to respond to the charges against him in violation of policy, and numerous other facts that support a conclusion Defendants discriminated against Plaintiff based on his age.  This is an employer where the head of Human Resources openly advocated eliminating older employees and finding ways to get rid of them; Plaintiff has presented evidence that this is precisely how Defendants treated Plaintiff and, as such, there is a genuine issue of material fact on Plaintiff's discrimination claims.

## II.    PLAINTIFF'S POLITICAL AFFILIATION RETALIATION CLAIM

Like the District Court, Defendants simply ignore Plaintiff's arguments and evidence on this claim.  They ignore the evidence from Ms. Wood, a representative of the County's Human Resources Department and who investigated the complaints against Plaintiff, which establishes Defendants viewed Plaintiff as "part of the other administration," i.e., the Patterson administration.  (**ECF No. 63-7, PageID.966**).  They ignore the evidence and statements that Plaintiff was being protected by "remnants" of the "former administration."  They ignore the concern expressed by

Mr. Paris that the County may be different under leadership after an election. Plaintiff was accused of having a political "agenda" against Diversity, Equity, and Inclusion. Because there is record evidence that Defendants perceived Plaintiff to be politically affiliated with the prior Patterson administration, there is sufficient evidence to create a genuine issue of material fact.

## III.    PLAINTIFF'S PRE-DEPRIVATION DUE PROCESS CLAIM

Defendants claim that they provided Plaintiff an opportunity to respond at the *Loudermill* hearing, because Plaintiff and his attorney were allowed to talk at the hearing. Defendants ignore that the Human Resources Department expressly told Plaintiff, both in writing and orally, that the *Loudermill* hearing was not the time to challenge the decision and to present reasons why he disagrees with it. The express instruction not to respond to the charges at that time violates the Due Process requirements for a *Loudermill* hearing. The County violated Plaintiff's rights as a matter of law as there is no dispute that Ms. Wood and Ms. Fisher made those statements to Plaintiff and/or his attorney.

Defendants do not respond to the fact that the trial court created and crafted an argument in support of Defendants' position, except to suggest that it is somehow appropriate for a trial court to do so, because Rule 56 permits a court to consider summary judgment on grounds not raised by the a party; however, Defendants ignore that if a court chooses to do so, it must first give notice and a reasonable time to

respond, which were not given in this case.  *See* Fed. R. Civ. P. 56(f).  Such behavior on the part of the trial court violates the standard of review and raises questions unnecessarily about the court's impartiality.  Because such behavior raises those questions unnecessarily, this is exactly why judges adhere to the appearance of impropriety standard to prevent such issues from arising.

Defendants attempt to rely upon two District Court opinions to support the lower court's overly broad and erroneous reading of *Buckner v. City of Highland Park*, 901 F.2d 491 (6th Cir. 1990).  However, in both of those cases, the employee had or received notice of the charges against him and were given an opportunity to respond at a disciplinary conference prior to termination.  The two cases are easily distinguishable.  Defendants attempt to distinguish *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 F. App'x 354 (6th Cir. 2002), based on its claim that the *McDaniel* plaintiff did not receive a post-termination hearing and, as such, more emphasis was placed on the one pre-termination hearing.  This is incorrect and misstates the facts of *McDaniel*, where the plaintiff not only filed a grievance challenging her termination under the collective bargaining agreement that resulted in arbitration.  *Id*. at 356.  Simply put, Defendants did not give Plaintiff adequate notice and an opportunity to respond, such that denial of Defendants' motion was

proper.

## IV.    PLAINTIFF'S POST-DEPRIVATION DUE PROCESS CLAIM

The issue of whether Plaintiff received constitutionally sufficient post-deprivation due process has been briefed and it largely depends on one's view of the evidence.  Plaintiff would, however, like to point out some errors in Defendants' position.  Defendants argue that there really were no issues with getting witnesses to attend the hearing, because the County made assurances that they would be helpful. Defendants also argue that the summary of evidence, which did not identify who claimed Plaintiff made what statement, was sufficient.  The juxtaposition of these two arguments demonstrates why the summary was inadequate and the failure to provide the documents and information requested prior to the PAB hearing prejudiced the hearing process.  In the November 12, 2021 interview, Mr. Klemptner asked Plaintiff if he made various statements without context and without identifying who made the statement; Plaintiff denied making those statements as alleged.  *See* **(ECF No. 64-18, PageID.1363-1390)**.  In the November 22, 2021 letter that Defendants refer as a summary of the investigation, Defendants do not identify any witnesses who claimed Plaintiff made the alleged statements.  *See* **(ECF No. 64-15, PageID.1352-1353)**.  How could one know what witnesses he would need to cross-examine at a PAB hearing, if he does not know the identity of his accusers?

Plaintiff also contends that this Court should view the cumulative effect of the

various actions taken by Defendants.  That Defendants did not give adequate notice so that Plaintiff would know who made accusations against him and what they accused him of saying, Defendants did not give Plaintiff an opportunity to respond before termination, Defendants refused to consider affidavits of unavailable witnesses, Defendants refused to subpoena witnesses claiming they had no power to compel attendance (except, of course, that the County could discipline employees for insubordination if they refused), Defendants' email to employee prohibiting them from speaking with Plaintiff, Defendants' inclusion of provisions prohibiting former employees from criticizing the County in release agreements signed by employees who took retirement buyouts, Defendants refusals to provide documents requested by Plaintiff prior to the hearing, Defendants did not provide copies of the interviews of witnesses, Ms. Chambers expressing excitement at Mr. Lepler being on the board, Defendants' failures to comply with the PAB rules that provide for six members on the panel, including two Oakland county employees and another member of the Board of Commissioners, and all the other facts demonstrate a genuine issue of material fact regarding Plaintiff's post-deprivation due process claim.

## V.    PLAINIFF'S DEFAMATION CLAIM

Defendants argue that Defendant Jen's statements were "about hypothetical future events" and, as such, constituted opinion or were otherwise not defamatory. This argument does not make sense in light of Plaintiff's claims that Defendant Jen

defamed him by implication.    Defendant Jen defamed Plaintiff by creating defamatory implications that Plaintiff was presented a physical threat to employees' safety.  This was not some concern about the future; Defendant Jen's implication was that the threat posed by Plaintiff was contemporaneous to the email.  Defendant Jen instructed employees to work from home that very day while Plaintiff was Plaintiff was on leave and were giving instructions on how to handle sightings of or communications with Plaintiff demonstrate that the implication was that Plaintiff presented an ongoing threat.  Defendants' attempt to label it as involving some future conduct and giving no further analysis is unpersuasive.

In a similar fashion, Defendants label Defendant Jen's statement opinion without explication.   Neither Defendants nor the trial court analyzed whether Defendant Jen's statements were pure opinion or mixed opinion.  Mixed expressions of opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Harris v. Bornhosrt*, 513 F.3d 503, 522 (6th Cir. 2008).  This is precisely what Plaintiff claims that Defendant Jen did not disclose facts upon which he concluded and implied that Plaintiff posed a security threat.  Since there is not a scintilla of evidence that Plaintiff ever posed a security threat and, even if Defendants could point to something, it would only create a factual dispute regarding whether those undisclosed facts upon which the defamation relies are false.

The reliance on undisclosed facts by Defendant Jen in implying Plaintiff

posed a threat also helps establish malice. There is no evidence that Plaintiff actually posed a security threat. Whatever undisclosed facts Defendant Jen relied upon, they were not true and fabricated. Evidence that a defendant fabricates the defamatory statements or allegations is evidence of malice. *Hildebrant v. Meredith Corp.*, 63 F. Supp. 3d 732, 746 (E.D. Mich. 2014); *Armstrong v. Shirvell*, 596 F. App'x 433, 447 (6th Cir. 2015). Because Defendant Jen falsely characterized and implied Plaintiff posed a security threat and created that characterization out of whole cloth, a reasonable juror could conclude that Defendant Jen fabricated the "undisclosed facts" upon which he relied and, as such, there is a question of fact regarding malice.

## <u>CONCLUSION & RELIEF REQUESTED</u>

For the reasons set forth above and in his initial brief, Plaintiff-Appellant respectfully requests that this Honorable Court reverse the District Court's grant of summary judgment in Defendants' favor.

<div align="right">

Respectfully submitted,
THE MASTROMARCO FIRM
</div>

Dated: <u>January 2, 2025</u>      By:   <u>*/s/ Kevin J. Kelly*</u>
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff-Appellant
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
kkelly@mastromarcofirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief does not comply with the type-volume limitation pursuant to FED. R. APP. P. 32(a)(7)(B).  The foregoing brief contains 5,280 words of Times New Roman 14-point proportional type.  The word processing software used to prepare this brief was Microsoft Word.

<div style="margin-left:40%">

Respectfully submitted,
THE MASTROMARCO FIRM

</div>

Dated: <u>January 2, 2025</u>        By:    *<u>/s/ Kevin J. Kelly</u>*
                                              KEVIN J. KELLY (P74546)
                                              Attorneys for Plaintiff-Appellant
                                              1024 N. Michigan Avenue
                                              Saginaw, Michigan 48602
                                              (989) 752-1414
                                              kkelly@mastromarcofirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the below date Appellant David Hieber's Reply Brief was served by electronic mail using the Sixth Circuit's Electronic Case Filing system on: <u>Christopher M. Trebilcock & Brian D. Shekell</u>.

<div align="right">

Respectfully submitted,
THE MASTROMARCO FIRM

</div>

Dated: <u>January 2, 2025</u>     By:     <u>*/s/ Kevin J. Kelly*</u>
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff-Appellant
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
kkelly@mastromarcofirm.com